THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 2:22-CV-00018-BO-BM

ROBIN TAYLOR,                                    )
                                                 )
                    *Plaintiff*,                 )
                                                 )
v.                                               )        O R D E R
                                                 )
ELIZABETH CITY                                   )
PASQUOTANK PUBLIC SCHOOL                         )
BOARD OF EDUCATION and                           )
TAMMY RINEHART, in her official                  )
capacity.                                        )
                                                 )
                    *Defendants*.                )

This is before the Court on defendants' motion to dismiss. [DE 11]. Plaintiff opposed that motion, and defendants replied. In this posture, the matter is ripe for adjudication. For the following reasons, Count II and Count IV are dismissed, and Count III is partially dismissed.

## BACKGROUND

In 2021, plaintiff (Robin Taylor) was employed as a part-time Child Nutrition Secretary at Elizabeth City Pasquotank Board of Education ("ECPPS"). She was politically active in the protests surrounding the April 2021 killing of Andrew Brown. On June 4, 2021, plaintiff was frightened to find a black plastic rat on her desk. Her boss, defendant Tammy Rinehart, said she had placed it there as a prank. However, plaintiff believed the rat was a sinister threat in response to her recent political activism. Around this time, plaintiff was denied leave for the birth of her granddaughters pursuant to the Family and Medical Leave Act (FMLA).

1

On June 7, 2021, plaintiff and Rinehart had an unrelated disagreement at work. Plaintiff wrote a letter ("June Letter") to ECPPS's Human Resources, complaining about the rat incident and being denied FMLA leave. As a result, HR began an investigation.

Plaintiff then fell ill and was permitted to take "leave under the benefits of FMLA." [DE 15 at 5]. While on leave, she was diagnosed with breast cancer and began receiving treatment. [DE 1 ¶¶ 39–42].

In a letter dated July 21, 2021, HR notified plaintiff that the investigation had concluded. The letter also informed plaintiff that her hours were being reduced and her position would be formally eliminated on June 30, 2022. [DE 1 ¶ 35–38]. After her leave was completed, plaintiff's breast cancer prevented her from returning to work. [DE 1 ¶ 55]. As of July 19, 2022, she was "unable to return" to work. [DE 1 ¶¶ 42, 55].

On August 20, 2021, plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). On April 19, 2022, plaintiff claims to have received notice of her right to sue. [DE 1 ¶ 49]. On July 18, 2022, she filed this complaint against ECPPS and Tammy Rinehart, alleging discrimination in violation of Title VII (Count I), a violation of her rights under the FMLA (Count II), various theories of retaliation (Count III), and intentional infliction of emotional distress (Count IV). [DE 1]. Defendants filed a Rule 12(b)(6) motion to dismiss Counts II and IV and part of Count III. [DE 11].

## DISCUSSION

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable

to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Id*. A complaint must be dismissed if the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### Count II – FMLA.

The FMLA provides covered employees with two types of protections. 29 U.S.C. § 2601(a). Employees are "entitled to a total of 12 workweeks of leave during any 12–month period" for family and health-related matters. *Id*. § 2612(a)(1). After taking that leave, employees also have the right "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." *Id*. § 2614(a)(1)(A)-(B); *see Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006).

Plaintiff argues that defendants violated her FMLA rights by reducing her hours and deciding to eventually eliminate her position. A plaintiff seeking to bring a claim for alleged interference with FMLA rights must, as a "threshold matter," establish interference by their employer and prejudice from that interference. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89, 122 S. Ct. 1155, 152 L. Ed. 2d 167 (2002). Specifically, when FMLA leave extends beyond the 12 weeks contemplated by the FMLA, the protections offered by the FMLA do not apply. *Ainsworth v. Loudon Cnty. Sch. Bd.*, 851 F. Supp. 2d 963, 975 (E.D. Va. 2012). As was the case

3

in *Ainsworth*, plaintiff "did not, and was physically unable to, return to work upon expiration of her FMLA leave. Consequently, [ECPPS] was under no obligation to reinstate her to her former, or an equivalent, position." *Id.* at 976. Plaintiff has been unable to return to work since June 2021, so she wasn't prejudiced by any alleged FMLA violation. Therefore, Count II fails to establish a *prime facia* claim for interference with her FMLA rights.

**Count III – Retaliation**

To plead a plausible retaliation claim, plaintiff must show that she engaged in protected activities, suffered an adverse action, and the protected activity caused the adverse action. *Anderson v. Discovery Commc'ns, LLC*, 517 F. App'x 190, 197–98 (4th Cir. 2013); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). The temporal proximity between the protected activity and the adverse action evidence does not conclusively establish a causal connection but can satisfy the making of a *prima facia* case. *See Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006).

Plaintiff alleges that she engaged in three protected activities: (1) submitting the "June Letter" to HR complaining about Rinehart in June 2021, (2) taking her FMLA leave in June 2021, and (3) filing an EEOC charge in August 2021. Plaintiff allegedly suffered "adverse action" when ECPPS "significantly and substantially changed her job responsibilities" and "eliminated her position while she was still on FMLA leave." *Id.* ¶ 59. This alleged adverse action occurred on July 21, 2021. [DE 1 ¶¶ 35-37]. However, plaintiff filed a complaint with the EEOC on August 20, 2021. [DE 1 ¶ 45]. The EEOC complaint could not have caused the adverse action because the complaint was filed *after* the adverse action. It is impossible to suffer retaliation for an action not yet taken. Therefore, to the extent plaintiff's claims of retaliation in Count III rest on her filing with the EEOC, that claim should be dismissed.

4

Defendants also argue that plaintiff's retaliation claim cannot be predicated on her FMLA leave because HR had initiated its investigation before plaintiff took her FMLA leave. [DE 12 at 9-10]. However, the investigation itself was not the alleged adverse action. Rather, the reduction of hours and elimination of her position, as memorialized in the July 21 letter, was the alleged adverse action. It is plausible that when she began her FMLA leave in June 2021, ECPPS had not yet decided whether to reduce and ultimately eliminate her position. The temporal proximity between plaintiff's FMLA leave (which coincidentally lined up with the birth of her granddaughters) and the July 21 letter is sufficient to state a prima facie case for retaliation. *See Yashenko*, 446 F.3d at 551. Therefore, this Court will not dismiss the retaliation claims that rest on plaintiff's FMLA leave.

**Count IV – intentional infliction of emotional distress**

Intentional Infliction of Emotional Distress ("IIED") is a tort, a claim from which ECPPS, as a governmental agency, is immune. "[A] county board of education is a governmental agency, and is therefore not liable in a tort or negligence action except to the extent that it has waived its governmental immunity pursuant to statutory authority." *Magana v. Charlotte-Mecklenburg Bd. of Educ.*, 183 N.C. App. 146, 148, 645 S.E.2d 91, 92 (2007). The statutory authority states that the ECPPS can waive its governmental immunity through the purchase of liability insurance if it does so expressly. N.C. Gen. Stat. § 115C-42.

ECPPS entered into a coverage agreement with the North Carolina School Boards Trust ("NCSBT"). [DE 12-2 ¶ 3]. But that NCSBT coverage agreement does not waive ECPPS's governmental immunity because it does not qualify as a purchase of "insurance" under § 115C-42. *See, e.g., Craig ex rel. Craig v. New Hanover Bd. of Educ.*, 185 N.C. App. 651, 654, 648 S.E.2d 923, 925 (2007). Indeed, the NCSBT coverage agreement itself states that it "is not considered a

5

waiver of governmental immunity as provided in N.C.G.S. § 115C-42." [DE 12-2 at 5]. Plaintiff made no attempt to rebut this argument, and thus, Count IV is dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss [DE 11] is GRANTED IN PART. Counts II and IV are DISMISSED. The portions of Count III that rest on her filing with the EEOC are DISMISSED.

SO ORDERED, this _11_ day of January, 2023

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE